NANCY GATES ET AL. v. D. A. COLE ET AL., Appellants.

137   613
139   238

137   613
144   405
f144  587

**Wills:** UNDUE INFLUENCE: BURDEN OF PROOF: EVIDENCE. Undue influence in the making of a will which will avoid the instrument must be proven by the party alleging it, and must be shown that it operated upon the mind of the testator at the very time the will was executed to such an intent that the will was the result thereof. Evidence held insufficient to show such influence as to justify setting the will aside.

**Same.** Neither opportunity to exercise undue influence, nor advise and solicitation, will render a will invalid unless it is further shown that the testator's will was overcome thereby.

**Same:** TESTAMENTARY CAPACITY: *Senile dementia:* EVIDENCE. Where *senile dementia* is relied upon to invalidate a will it must appear that the disease had progressed to such a stage that the testator had not the requisite intelligence to comprehend the condition and extent of his property, and the persons who would ordinarily be his beneficiaries.

**Same:** PRESUMPTION AS TO INCAPACITY: BURDEN OF PROOF. The burden of proving a condition of mind rendering a testator incapable of making a will is upon the contestant, but when once established the presumption of its continuance arises; this presumption, however, may be overcome, but on this question the proponent has the burden.

**Mental incapacity:** EVIDENCE. Evidence reviewed and held insufficient to show *senile dementia* rendering the testator incapable of making a will.

*Appeal from Boone District Court.*— HON. J. R. WHITAKER, Judge.

WEDNESDAY, MARCH 11, 1908.

THIS is an action brought to set aside the will of Matilda Cole, deceased, on the ground of mental incapacity and undue influence. There was a trial to a jury and a verdict

against the will.    The defendants, who were the proponents of the will, appeal.— *Reversed.*

*Goodykoontz & Mahoney,* for appellants.

*D. G. Baker* and *G. W. Crooks,* for appellees.

SHERWIN, J.— Matilda Cole, the testator, died in December, 1905, leaving surviving her a son, David A. Cole, one of the defendants herein, and her daughter, Nancy C. Gates, one of the plaintiffs.    The other plaintiffs are grandchildren of Matilda Cole.    The deceased was the widow of Mathew R. Cole, who died intestate in 1887.    After the death of her husband, Mrs. Cole continued to reside in the family homestead, and died there in December, 1905.    She had lived where she died for about fifty years.    The will in question was executed on the 29th day of June, 1903, and at that time she was past seventy-five years of age.    One witness testified that she was then seventy-six and another that she was seventy-nine.    Her death resulted from a fractured hip.    After her death, the will in question was duly probated, and thereafter this action was brought to contest its validity; the contestants alleging undue influence on the part of the defendant, David A. Cole, and his wife, Martha, and also the mental incapacity of the testator at the time the will was made.    The jury, in answer to special interrogatories, found both mental incapacity and undue influence.    As the finding on each of these issues is vigorously assailed, and as we believe the evidence wholly insufficient to support either, we shall review the evidence upon which the contestants chiefly rely for an affirmance.    Mathew R. Cole, the testator's husband, was a farmer and died intestate, the owner of two hundred and forty acres of land.    This land was subsequently partitioned in kind; the widow receiving one hundred and twenty acres, the two living children forty acres each, and the widow and children of a deceased

son the remaining forty acres. Still later the widow, Matilda Cole, sold and conveyed forty acres of the land which she had received to her son, David A. Cole, who is a defendant herein, and forty acres to one Harris, so that, at the time of the execution of her will and at the time of her death, she owned but forty acres of the land, which she had originally acquired by the partition proceedings. This forty acres she devised to David A. Cole and the rest of her estate, consisting of personal property of the value of about $2,000, she left to her daughter Nancy, to the children of a deceased son, and to a young man whom she had raised. At the time of his father's death, as we understand the record, David was residing in Webster county, but soon thereafter he moved to Boone county, and settled on the forty-acre tract that he had obtained from his mother, and near her residence, where he lived until her death. He and his family were at his mother's home very often, and during the last few years of her life he transacted most of her business for her, and looked after her affairs generally. The evidence is practically conclusive that Mrs. Cole relied greatly and naturally upon David and his family, and that she often expressed her appreciation of their kindness and work in her behalf.

The contestants rely upon this close relationship and upon a few particular transactions to support their claim of undue influence. As to the latter, the record discloses that Matilda Cole gave the husband of one of her granddaughters permission to draw wood across a forty of her land which was at the time rented to her son David; that David objected thereto, because it would interfere with his fences, and finally excluded Harris. At another time David induced his mother to kill only two hogs, in place of three, for her winter supply of pork. He suggested to his sister Nancy that his mother's house " be cleaned up a little." He asked one Redenbaugh, who seems to have been making the old lady an extended visit on the strength of his former courtship of a

1. WILLS: undue influence: burden of proof: evidence.

daughter, to depart, telling him at the time that his mother's maid threatened to leave if he did not. It was also shown that Matilda Cole gave a young maid a pair of stockings, with the request that she say nothing to David about it. At another time she gave a friend $1, and asked her maid not to tell her son.

The contestants' most serious claim relates to the time when the will in question was made, and to the circumstances surrounding its execution. Matilda Cole lived about seven miles from Boone, and on the day in question she was taken there by David and his wife for the purpose of making a will. Mr. Crooks, of counsel for the appellees, was an old acquaintance and had drawn one will for her, and, when they reached Boone, she suggested that he be employed for that occasion. David, however, suggested that she go to the office of Mr. Goodykoontz, because it was nearer, and because Mr. Crooks was deaf. His mother readily acquiesced in the suggestion, and she was accordingly helped to the office of Mr. Goodykoontz, where the will was drawn at her instance, and as she dictated, and where it was signed by her and duly witnessed. While counsel for appellees make the claim that Martha Cole was present when the will was prepared by Mr. Goodykoontz, and when it was signed by the testator, and that David prepared and handed to the attorney a memorandum of what it should be, there is not a particle of evidence sustaining such claim, nor is there any evidence from which such an inference may rightly be drawn. There is nothing in the record but inference tending to show that either David Cole or his wife knew what disposition the mother desired or intended to make of her property. On the other hand, the evidence does show that she at that time acted freely and without any restraint. Undue influence must be proven by the party alleging it, and it must further be proven that it operated upon the mind of the testator at the very time the will was executed to such an extent that the will was the result hereof. *Townsend v. Townsend,* 128 Iowa, 621.

It may be conceded that the evidence shows opportunity for undue influence; but the opportunity shown is no greater than should be present in all such cases if the child possess the love which the relationship demands, and opportunity alone is wholly insufficient to establish undue influence. *Perkins v. Perkins,* 116 Iowa, 253. Even advice and solicitation, no matter how insistent they may have been, will not make a will invalid unless it be further shown that the freedom of the testator's will was overcome thereby. *Chambers v. Brady,* 100 Iowa, 622; · *Townsend v. Townsend, supra.* We have given the record the consideration the case demands, and reach the conclusion that the will was not the product of undue influence.

*2. SAME.*

On the question of the testator's mental capacity at the time the will was executed, the case at first blush appears to present a more difficult question; but upon careful analysis of the evidence we do not think it in reality does. It is the contention of the appellees that the evidence shows *senile dementia* extending over a period of several years prior to the making of the will, and, unless the evidence sufficiently sustains such contention, they have no basis for the finding of mental incapacity when the will was made, because their testimony all relates to the testator's condition some time before its execution. Before we discuss the evidence upon which the contestants rely, it will be well to note what *senile dementia* really is. That it differs greatly both in process and progress of decay is freely admitted by all writers on the subject. Medical observers say that it cannot be described by any positive characters; that, in its gradual advance to incompetency, it embraces a wide range of infirmity, varying from simple lapse of memory to complete inability to recognize persons or things; " that often the mental infirmity of the aged is by no means as serious as might be supposed at first sight, and that, to use a figure of speech, the mind may be superficially rotted while it is sound at the core."

*3. SAME: testamentary capacity: senile dementia: evidence.*

It is generally said that one of the surest symptoms of mental decay is the loss of memory; and especially in respect of names and dates; but it is fully recognized in the authorities that, while an old person may appear oblivious in such matters, his mental grasp of the relations he sustains to others and more especially to the immediate members of his family, and to others who would be the natural objects of his bounty, and of his own interest and affairs, his capacity and solid understanding may still remain firm. Failure of memory is not alone enough to create testamentary incapacity, unless it extends so far as to be inconsistent with the " sound and disposing mind and memory " requisite for all wills. " Great age alone does not constitute testamentary disqualification," and " there is no presumption against a will because made by a man of advanced age, nor can incapacity be inferred from an enfeebled condition of mind or body." *Horn v. Pullman,* 72 N. Y. 269. The law wisely sustains wills made by persons of impaired mental and bodily powers, provided it appears that the will is the uninfluenced act of the testator, and he has the requisite intelligence to comprehend the condition and extent of his property and remember the persons who would ordinarily be his beneficiaries. In *Banks v. Goodfellow,* L. R. 5 Q. B. 549, Chief Justice Cochburn held that, though mental power be reduced in old persons below the ordinary standard, yet, if the testamentary act is understood and appreciated in its different bearings, if the mental faculties retain enough strength to comprehend the transaction entered upon, the power to make a will remains. In other words, to constitute *senile dementia,* there must be such a failure of the mind as to deprive the testator of intelligent action. Such is the rule of our own cases, and the rule established by the great weight of authority. See *Townsend v. Townsend, supra; Fothergill v. Fothergill,* 129 Iowa, 93; *Perkins v. Perkins, supra; Lingle v. Lingle,* 121 Iowa, 133.

The burden of proving such general and settled unsound-

ness of mind prior to the 29th of June, 1903, as to render the testator incapable of making a valid will, rested on the contestants. But, when such condition is once established, the presumption arises that it continues. *Kirsher v. Kirsher,* 120 Iowa, 337. Such presumption may, of course, be overcome by proof that the condition did not exist when the will was executed, but the burden of so doing then rests upon the proponents.

4. SAME: presumption as to incapacity: burden of proof.

The evidence relied upon by the contestants to show *senile dementia* for years before the will was executed is substantially as follows: Robert D. Royster, who was the most important witness for them, testified that he had known the testator for a great many years, and that the last business he did for her and the last talk on business matters he had with her were something like fifteen years before. He said he did not know anything about her capacity to transact business in 1903, but that a long time prior thereto he had a conversation with her relating to the removal from a church of some old seats and a pulpit which had been placed therein during her husband's life. She wanted them left in the church, and gave as her reason therefore that her husband had contributed liberally to the church. Royster also testified that during the last few years of her life the testator's eyes did not look as they had formerly looked, and that there was a difference in her appearance which he could not explain. "She was getting weaker. She was more dull then she used to be; wasn't so bright, like all old people getting old and going down." Based on the facts testified to, the witness then said that in his judgment the testator was incapable of making a will. Conceding the truth of the facts related, they fall far short of supporting the conclusion drawn therefrom by the witness. They describe conditions present in the case of nearly every old person, and surely mental incompetency cannot be predicated thereon. Moreover, the further testimony of the same wit-

5. MENTAL INCAPACITY: evidence.

ness almost conclusively demonstrates the error of his conclusion. J. F. Richey testified that for two or three years before her death the testator's eyes did not "look as bright as they used to be." "She told things over and over several times." He said she did not talk business matters, but told him that she "had to do as David and Martha told her." The witness then said that he thought her incapable of making a valid will. The same witness said on cross-examination that "other reasons why I say she was of unsound mind is because she was an old lady, and she had no education. She was too old to make a will. A person of that age is incapable is my idea." Mary Sewer testified that Mrs. Cole was forgetful; that she used to drop her cane and "tell it to come back to her, and tell it to lay there if it didn't want to." . . . "When she would go to wind it (the clock), she would say she had to wind the clock, and go home. She always called it home when she went to bed. . . . She believed in signs and in the change of the moon. When the weather would change, and it got cold or came on to rain, she would say the moon was changed." Other witnesses testified to practically the same state of facts. George Harris testified that she was forgetful, and, "when I would stop in, she would tell me things, . . . and the next time I came over she would get to talking about what she told me. She had forgot all about it. I noticed the expression in her face was different. There was a kind of look in her eyes that I didn't understand. I don't know what it was." Based on these facts, the witness said he thought Mrs. Cole incapable of making a will in June, 1903. Guy Wilson testified that she kept a corn knife, an axe, and a revolver under her bed, and that she "hollered in her sleep. . . . I noticed her cheekbones and her eyes were sunk back in her head further. She didn't look right to me out of her eyes." There is more testimony along the same line which we need not repeat.

We have given the substance or the language of practically all of the testimony on which the contestants rely to

establish *senile dementia,* and consequent incapacity. It is very noticeable that nowhere in all of their testimony is it shown that Mrs. Cole had forgotten her relations or friends, or had failed to recognize them. Nor is it shown that she was oblivious to her property rights and interests. Indeed, many of the contestants' witnesses testified to facts and circumstances clearly showing that, aside from the usual infirmities of old age, the testator was as bright and capable as the ordinary person of such age. The testimony before us does not bring the case up to the standard of *Bever v. Spangler,* 93 Iowa, 576, and *Manatt v. Scott,* 106 Iowa, 203, as contended by counsel; nor does it in our judgment furnish any foundation for the claim of *senile dementia.* Furthermore, the testator's family physician and many other witnesses entirely disinterested in the result of this litigation testified that Mrs. Cole was not of unsound mind either before or at the time the will was made, but that she was as bright and intelligent as the ordinary person of her age. If mental incapacity can be found from such evidence, no person who has passed much beyond the meridian of life can make a testamentary disposition of his property with any assurance of having his will or wishes carried into effect after his death.

Our conclusion on the facts makes consideration of the other questions argued by the appellants unnecessary. The motion to strike the appellees' so-called reply is sustained. The judgment is for the reasons pointed out *reversed.*