IN RE ESTATE OF NINA G. KENNY.

JAMES K. STEPP, Appellant, v. JENNIE. GUTHRIE, Appellee.

No. 46200.

June 15, 1943.

Bronson & Ellis, of Manchester, and Brammer, Brody, Charlton & Parker, of Des Moines, for appellant.

Frazier & Rees, of Anamosa, and Yoran & Yoran, of Manchester, for appellee.

MILLER, J.—On May 25, 1941, Nina G. Kenny, age fifty, a childless widow, became a patient at the Jones-Clark Hospital at Manchester. On the following day she executed a will. Four days later she died. The will revoked all prior wills, directed the sale of a farm of 120 acres, payment of debts including last illness, burial, etc., therefrom, that the balance of the proceeds of the sale of the farm be paid to Dr. James K. Stepp; a fur coat was bequeathed to a sister-in-law; all other property was devised and bequeathed to the brothers and sisters living at time of death. The will was filed for probate and Dr. Stepp became proponent thereof. Mrs. Jennie Guthrie, mother of decedent, contested its probate, asserting lack of testamentary capacity and undue influence. At the trial the contestant withdrew the issue of undue influence. Proponent's motion for a directed verdict on the issue of testamentary capacity was overruled. On that issue, the jury found for contestant. Proponent appeals to this court.

I. The proponent challenged the contestant's standing in court. As the mother of the deceased, who died leaving no spouse or issue, contestant is the sole heir at law. The basis for

proponent's challenge of contestant's standing in court was that deceased had made a will in 1938 which disinherited contestant, so that, if the present will should be rejected, the 1938 will would be valid and contestant would not participate in the estate, and, accordingly, she has no interest in the estate such as would entitle her to contest the present will. Proponent offered to prove the execution and contents of the 1938 will and offered to produce that will. The evidence was offered solely upon the issue of contestant's standing in court. Contestant objected to the offer. The objection was sustained. Error is assigned here because of such ruling.

In the case of In re Estate of Duffy, 228 Iowa 426, 430, 292 N. W. 165, 167, 128 A. L. R. 943, we state:

"It is generally recognized by the courts and other authorities that no one has any standing to object to the probate of a will, 'or to bring any action to set aside its probate, unless he has an interest in property which the testator owned at his death and attempted to dispose of by will."

The above pronouncement is followed by an extensive review of the authorities that hold to the same effect. Prior decisions of this court on the question include Burk v. Morain, 223 Iowa 399, 272 N. W. 441, 112 A. L. R. 79; In re Will of Adkins, 179 Iowa 1025, 1029, 162 N. W. 193; In re Estate of Livingston, 179 Iowa 183, 190, 153 N. W. 200; In re Estate of Jones, 130 Iowa 177, 179, 106 N. W. 610; In re Will of Fallon, 107 Iowa 120, 77 N. W. 575; In re Estate of Stewart, 107 Iowa 117, 77 N. W. 574; Kostelecky v. Scherhart, 99 Iowa 120, 68 N. W. 591.

In the case of Kostelecky v. Scherhart, supra, we held that a contestant might show her interest in the estate of decedent by proof of the fact that she was a devisee under a prior will. Proponent asserts that this is authority for his contention that the interest of the contestant herein might be disproven by a showing that she was disinherited by a former will. However, we think that a somewhat different question is presented.

Since a contestant must show that he has an interest in the estate as a prerequisite to contesting the will, if that interest arises by reason of a devise in a prior will, proof thereof is

indispensable to maintenance of the action. Here, however, contestant proved her standing in court by showing that she is the sole heir at law. This entitled her to contest the will. When proponent sought to disprove her standing in court by offering to show that she was disinherited by a prior will, proponent sought to change the course of the trial into a determination of the question whether the decedent died testate or intestate rather than whether the proposed will is valid. This course of conduct raised a question similar to that decided by us in the case of In re Estate of Cocklin, 230 Iowa 415, 297 N. W. 864.

In the Cocklin case, decedent had executed three wills, one in September 1939, one in December 1939, and the third in February 1940. The February will was offered for probate. A contest resulted. The contestant asserted that there were two prior wills and asked that a consolidated trial be had as to all three wills. The proponent moved to strike the cross-petition. The court sustained the motion to strike and overruled the motion to consolidate. On appeal the cause was affirmed. At pages 418 and 419 of 230 Iowa, page 865 of 297 N. W., we state:

"In the present lawsuit it is not a question as to whether Lewis A. Cocklin died testate or intestate, but the question is, was the will dated February 3, 1940 a valid one; and the appellant can plead nothing in this case except what would raise an issue on the question of probation of said will. The single issue involved is the validity of the February Will and that issue alone should be tried and submitted to the jury for its consideration without having such issue clouded with wills which had been made, revoked and destroyed."

To sustain proponent's contention herein would seem to require us to recede somewhat from the foregoing pronouncement. We are unwilling to do so. We adhere to the proposition that, whenever possible, the issue as to the validity of the will in question should not be clouded with questions as to the validity of prior wills. Otherwise, the jury might become lost in a maze of collateral issues. Had proponent offered evidence to dispute the relationship of contestant to decedent, a different question would have been presented. That would have been a challenge of the very basis upon which claimant rested her standing in

court. But that relationship was conceded by stipulation. The proof offered by proponent did not controvert the proof of claimant as to her standing in court. It sought to change the issue and require a determination whether decedent died testate or intestate. We refused to permit a similar course of conduct in the Cocklin case. We adhere to that position here.

■ There is a practical aspect of the case which strengthens our position herein. Proponent challenged the contestant's standing in court without first pleading the issue in advance of trial. Had the issue been specifically pleaded, it might have been determined or avoided without the confusion which the trial court undertook to avoid. The 1938 will devised and bequeathed the entire estate, after payment of debts and expenses, to decedent's brothers and sisters, who are residuary legatees under the 1941 will. Some of these brothers and sisters testified for contestant herein. The situation is unusual. Had the decedent executed only the 1941 will, the mother alone, as sole heir at law, could contest that will. But if the 1938 will is valid, the brothers and sisters, as devisees and legatees, and not the mother, as an heir, would be entitled to contest the 1941 will. Had this issue been raised in advance of trial, some of the brothers and sisters would have been in a position to intervene to perpetuate the contest in the event that the sole heir was disqualified. By waiting until contestant's evidence was introduced and the trial was well under way before challenging contestant's standing in court, proponent created an emergency which could have been avoided. In such a situation the trial court had some discretion in the matter of the conduct of the trial. The course taken sought to avoid confusion which might have jeopardized a fair trial. There was no such abuse of discretion as would warrant or require a reversal at our hands herein.

■ II. On the merits of the case, proponent challenges the sufficiency of the proof to present a jury question on the issue of mental capacity. This proposition was raised below by proponent's motion for directed verdict, made at the close of contestant's evidence and renewed at the close of all of the evidence. The motion was overruled in each instance. Error is assigned here because of such rulings.

The parties stipulated that the legal requirements for due execution of the will were met so that the only issue presented by the evidence is that of testamentary capacity of decedent. Such being the case, proponent asserts and contestant concedes that decedent is presumed to have had testamentary capacity and the burden of proof was on the contestant to show that the deceased did not possess sufficient mental capacity to make a valid will. There seems to be no serious dispute, either, but that the proof must be sufficient to show testamentary incapacity at the precise time of the execution of the will. In re Estate of Hayer, 230 Iowa 880, 299 N. W. 431; Bishop v. Scharf, 214 Iowa 644, 241 N. W. 3.

This court is committed to the doctrine that a mere scintilla of evidence will not sustain the burden of proof. As applied to will contests, the rule is concisely stated in Bales v. Bales, 164 Iowa 257, 276, 145 N. W. 673, 680, as follows:

"It was formerly considered necessary in all cases to leave the question to the jury if there was any evidence in support of the case, but it is now settled that the question for the judge is, not whether there is literally no evidence, but whether there is any that ought reasonably to satisfy the jury that the fact sought to be proved is established. This rule has been adopted and followed in this state for many years."

The foregoing pronouncement has been applied to a great many will contests. We have repeatedly held that the court must determine whether the evidence is sufficient to reasonably satisfy the jury that decedent was unable to understand the nature of the instrument, to recollect the property he means to dispose of, the objects of his bounty and the manner in which he wishes to distribute it among them, before a jury question is presented in a will contest. In re Estate of Hayer, supra, 230 Iowa 880, 884, 299 N. W. 431, 434; Bishop v. Scharf, supra, 214 Iowa 644, 653, 241 N. W. 3, 7; In re Estate of Koll, 200 Iowa 1122, 1128, 206 N. W. 40, 43; Seamans v. Gallup, 195 Iowa 540, 542, 190 N. W. 395; Byrne v. Byrne, 186 Iowa 345, 172 N. W. 655; In re Will of Kester, 183 Iowa 1336, 167 N. W. 614; Leonard v. Shane, 182 Iowa 1134, 166 N. W. 373; Bales

v. Bales, supra, 164 Iowa 257, 261, 145 N. W. 673; Perkins v. Perkins, 116 Iowa 253, 259, 90 N. W. 55, 57.

The rule is often easier to state than it is to apply. In this case, as in most cases, certain facts are established without serious question. The issue becomes narrowed to those instances where the testimony is in conflict.

The following facts are not seriously disputed: In May 1941, decedent, age fifty, a childless widow, resided in an apartment at Earlville, Iowa. Her mother, age eighty and a widow, resided at Hopkinton, some twelve miles or so from Earlville. Both towns are in Delaware county, of which Manchester is the county seat. On Sunday, May 24, 1941, Mrs. Kenny became ill. Dr. Rogers, of Earlville, attended her. On the following day she was taken to the Jones-Clark Hospital at Manchester and was there attended by Dr. Stepp, proponent herein. He also consulted with Dr. J. I. Jones, of Manchester. Her condition was diagnosed as that of an obstruction of the intestine. On May 27th, she suffered a partial coronary occlusion—heart attack—probably caused by cancer. On May 30, 1941, she died. In the meantime, about 11:30 a.m., May 26th, Mr. H. J. Williamson, an attorney who had been Mrs. Kenny's lawyer before, received a call to visit her at the hospital. He visited her at about 1:45 p.m. that day and received instructions from her for the preparation of her will. The will was prepared by Mr. Williamson, who returned to the hospital about 4 p.m. the same day and the will was then executed. Mr. Williamson acted as one of the witnesses. The other witness was Viola Harwick, Mrs. Kenny's nurse at the hospital. The two witnesses to the will were the only people present when the will was executed. The foregoing undisputed facts afford a background for consideration of the disputed questions of fact herein.

Mr. Williamson testified in detail regarding his conference with Mrs. Kenny at the hospital on the afternoon of May 26, 1941, when she outlined the manner in which she desired to have her will drawn, as well as conversations had with her on prior occasions. The prior conversations had been in generalities; nothing specific was suggested. On the afternoon of May 26, 1941, however, she specifically advised him as to the provisions of her will. The conference lasted fifteen to thirty minutes,

nearer thirty. He returned to his office to draw the will and was back at the hospital about 4 p.m. Mrs. Kenny read the will and said, ''You have made it just the way I told you.'' She had said that she wanted the nurse, Mrs. Harwick, to act as a witness. Mrs. Harwick came in in a few minutes and the will was executed. Mr. Williamson testified, ''There was no question in my mind as to Mrs. Kenny's want or lack of testamentary capacity * * *. None whatever. I was absolutely satisfied she was capable.'' Mrs. Harwick testified that Mrs. Kenny seemed to be all right mentally at the time she signed the will; she told some of the brothers and sisters that questioned her about it that she would not have signed the will if she had any doubt about it. Dr. Stepp testified, as attending physician, concern-ing Mrs. Kenny's illness, symptoms, and the like. The testimony was abundantly sufficient to sustain a finding of testamentary capacity. The question is, Does the testimony of contestant raise sufficient conflict to present a jury question?

There was evidence that decedent and her mother were on friendly terms, as were the brothers and sisters. Contestant and her son Russell Guthrie testified that they arrived at the hospital at about 1:45 p.m., May 26, 1941, and went to Mrs. Kenny's room; Mrs. Kenny did not appear to recognize them at all; the two of them left soon and came back at about 3 p.m. with another son, William, and his wife; Mrs. Kenny did not appear to recognize them, paid no attention to them; she said nothing; her eyes were closed or rolled back; she rolled from side to side in her bed. Russell testified that Mrs. Kenny looked at them and said, ''Did you bring my dog? Where is Shep? I want Shep!'' She had owned such a dog many years before. This testimony was corroborated by other witnesses, including William, who testified that she also said her feet were burning up and that she wanted to go wading. This was corroborated by other witnesses. These four witnesses testified that they were with Mrs. Kenny until about 3:50 p.m. on May 26th, dur-ing which time her condition was as above outlined.

Two other witnesses testified that they were at the hospital a little after 4 p.m. on May 26th, while Mr. Williamson was with Mrs. Kenny; they entered the sick room soon after he left; Mrs. Kenny screamed and cried, ''Where's my dog? Did you bring

my dog? Where is he"? They spoke to her. At first she did not know them.. She said, "You know anybody that's had a hypo are not always themselves." She did not say anything else, began to cry. "Didn't know anything," was like a hysterical person.

There was considerable evidence as to administration of drugs to Mrs. Kenny on May 25th and 26th. On May 26th, Mrs. Harwick gave her one-half grain of codeine at 10 a.m. and another one-half grain of codeine at 12:20 p.m. The other nurse, Mollie Robinson, testified that she gave Mrs. Kenny one-fourth grain of morphine sulphate at 4 a.m. on the 26th and six grains tincture of belladonna at 6 a.m. on the 26th.

There was other evidence, of course. Mrs. Kenny was obviously a very sick person, in considerable pain, on the day her. will was drawn. Counsel for contestant do not challenge Mr. Williamson's integrity as a lawyer; they concede that his standing is excellent. They contend that he must have been mistaken as to the mental condition of his client and that the evidence offered was sufficient to warrant the jury in so finding. Counsel for proponent, on the other hand, contend that the testimony of contestant can be reconciled with that of proponent; that Mrs. Kenny was very sick, but, when aroused, was possessed of her faculties and competent to make a will. The argument is persuasive but not convincing. The condition described as existing from the time Mr. Williamson first left the hospital until he returned and that described after his departure the second time is too difficult to reconcile with the condition he described while there. Considerable evidence disputing various details was offered. There was a definite conflict in the evidence. It was for the jury to decide the conflict.

The record is such that the jury might have found that Mrs. Kenny had no reasonable ground for practically disinheriting her family by giving the bulk of her estate to Dr. Stepp and that such a disposition of her property was unnatural. This is a proper circumstance to be considered in determining whether she was of sound mind. Dolan v. Henry, 189 Iowa 104, 110, 177 N. W. 712, and cases cited therein. The record is also subject to the interpretation that Mrs. Kenny was seriously ill, suffering

severe pain, and that her condition had rendered her irrational. Such circumstances were proper for consideration of the jury on the issue of testamentary capacity. While Mr. Williamson and Mrs. Harwick were the only persons with Mrs. Kenny at the time the will was executed, the witnesses for contestant observed her to within a few minutes before that time and within a few minutes thereafter. The proximity was sufficient to be competent and material in determining her condition at the very moment that the will was executed. Persuasive arguments are made that she was competent at that time. But the record also supports persuasive arguments to the opposite effect. The jury could find either way under the record herein. It was the province of the jury, not the court, to determine the conflict. The scintilla-of-evidence rule, relied upon by proponent, is not applicable. The motion to direct a verdict was properly overruled.

The foregoing disposes of all of the propositions asserted by proponent as appellant herein. Accordingly, the judgment is— Affirmed.

All JUSTICES concur.