In re Estate of Joseph Kirby.

Margaret Ellen Herz, appellant, v. Genevieve Kirby et al., appellees.

No. 47585.

(Reported in 41 N.W. 2d 8)

February 7, 1950.

Thomas Doherty, of Dubuque, and Irving D. Long, of Manchester, for appellant.

Peter W. Klauer and Francis H. Becker, both of Dubuque, for appellees.

MANTZ, J.—This is a will contest. On March 23, 1949, there was filed in the office of the clerk of the district court in and for Dubuque County, Iowa, an instrument purporting to be the last will and testament of Joseph Kirby, deceased. Objections were later filed thereto by a niece of the deceased, alleging that the purported will was of no validity on the grounds that at the time executed Joseph Kirby lacked mental capacity to make the same; also, that it was the result of undue influence exercised over the deceased by certain devisees named therein.

The case was tried to a jury and when objector (hereinafter referred to as contestant) rested, upon motion of proponents the court directed a verdict wherein the will was declared to be valid. This appeal followed.

Appellant sets forth but one error and that is the ruling of the court in directing a verdict when she rested. Appellant does not claim or argue the issue of undue influence, relying on her claim that there was sufficient evidence of mental incapacity of Joseph Kirby at the time the will was executed to require such issue to be submitted to the jury. Her brief points set forth are three in number.

First: "When passing on the sufficiency of the evidence the court must consider the evidence in a light most favorable to the contestant."

Second: "The weight of the evidence and the credibility of the evidence were for the jury."

Third: "Whether a nonexpert witness has testified to sufficient facts upon which to base an opinion as to mental soundness is primarily a question of law for the court in the exercise of sound legal discretion. Where a witness properly allowed to give an opinion its value is for the jury to determine."

The first brief point may be conceded. It is unnecessary to cite authorities in support thereof. The same may be said of the second point. In proper cases the weight of the evidence and of the credibility of the witnesses and their evidence is for the jury.

As to the third point relating to the weight and effect to be given to the testimony of a nonexpert witness, that where a

nonexpert gave an opinion as to the mental soundness of the testator, such question calls for an examination of the testimony given by such witness.

I.  Before setting forth the evidence of contestant and particularly that given by nonexpert witnesses who gave opinions that the testator was insane or of unsound mind in 1944 we will set forth some of the rules and principles of law to be applied in cases of this kind—will contests.

In the inception we will begin with the statute which deals with the question as to what persons are competent to execute wills.

Under our statute it is provided that any person of full age and sound mind may dispose by will of all of his property. Section 633.1, Code of 1946.

█  In passing upon the sole question raised on this appeal, to wit, mental incapacity of Joseph Kirby, we are to start with the fundamental principle that under ordinary circumstances a person has the absolute right to dispose of any property owned by him at his death, as he pleases. In the face of the statute it is not the business of the court to interfere with the disposition which Joseph Kirby made of his property. O'Brien v. Stoneman, 227 Iowa 389, 288 N.W. 447; Hastings v. Day, 151 Iowa 39, 130 N.W. 134, 34 L. R. A., N. S., 1021, Ann. Cas. 1913A 214; Canaday v. Baysinger, 170 Iowa 414, 152 N.W. 562; Roorda v. Roorda, 230 Iowa 1103, 300 N.W. 294; In re Estate of Heller, 233 Iowa 1356, 11 N.W. 2d 586; In re Estate of Nugen, 223 Iowa 428, 272 N.W. 638.

█  Where the testamentary capacity of a testator is challenged the burden rests upon the contestants to show that the testator did not have sufficient mental capacity to know and comprehend, in a general way, the natural objects of his bounty, the nature and extent of his estate or the distribution he wished to make of it. In re Estate of Meyer, 240 Iowa 1226, 1234, 37 N.W. 2d 265, 269, citing In re Estate of Sinift, 233 Iowa 800, 10 N.W. 2d 550; In re Estate of Fitzgerald, 219 Iowa 988, 259 N.W. 455. See also In re Estate of Hayer, 230 Iowa 880, 299 N.W. 431; In re Estate of Cocklin, 232 Iowa 266, 5 N.W. 2d 577; In re Will of Behrend, 233 Iowa 812, 10 N.W. 2d 651. See also cases cited Key No. 52, 19 Iowa Digest, page 185.

Let us examine the record and determine whether the appellant met the test and whether the court erred in directing a verdict for proponent. For the rule to be applied by the trial court when the motion to direct a verdict is made on the grounds of insufficiency of the evidence, see In re Estate of Hayer, supra; In re Estate of Shields, 198 Iowa 686, 200 N.W. 219; In re Estate of Fitzgerald and In re Estate of Sinift, both supra.

II. Joseph Kirby, the testator, a widower with no direct heirs had lived at Farley, Iowa, and vicinity for many years. He made a will on April 28, 1944. We find no mention of his then age in the record. He died on March 19, 1949. He left as his heirs a sister, Mary Kirby, and nine nieces, six grandnieces and a sister-in-law. A niece, Margaret Ellen Herz, contestant, is married and for years has lived in Chicago. His sister, Mary Kirby, lived with testator and kept house for him for many years.

His will gave $100 for Masses; $500 to one niece, Mary Monsener, of Freeport, Illinois; $500 to a sister-in-law, Mrs. J. V. Kirby, and the remainder to three nieces, Genevieve Kirby, Eva Kirby and Florence Kirby. The extent of the property in the estate is not shown by the record. Two nonrelatives were nominated executors. It was stipulated that the formal execution of the will was admitted.

Bearing in mind the right of Joseph Kirby to make a will disposing of his property and the presumption that he had capacity to do so and the requirement of the statute as to the burden of proof cast upon contestant, we will examine the record as to the sufficiency of the evidence to establish appellant's claim that on April 28, 1944, Joseph Kirby lacked sufficient mental capacity to make a legal will.

Appellant had five witnesses who testified. None of them had resided in the vicinity of Farley for years. She, with the other two witnesses, A. J. Herz, her husband, and a close personal friend, Ethel Monaca, live in Chicago, a distance of approximately two hundred miles from Farley. The record shows that for a number of years they came to Farley at rather infrequent intervals and visited a few days with testator and his sister. The other two witnesses were nieces, Sarah Neswick and Frances Gantz, both of whom live in Sioux City, Iowa, a distance

of about two hundred fifty miles from Farley. There was no medical testimony offered.

Mrs. Herz stated that she visited testator at Farley, Iowa, once or twice a year, usually at Easter and Christmas while on her way to Sioux City; that she was there in April 1944, and that she observed that testator slept with his clothes on; that he was not clean; did not cut his hair; would not come to a meal and at times left before it was finished; that on one occasion she saw him sitting under a tree when it was raining and she had to get him to come in; that he might take his pants off when he went to bed and that he would come out to the table without putting them on; that he roamed around the streets many times and he would have to be found; that he walked down the middle of the street, and traffic would have to stop for him; that he would not hold a conversation; that she had not had a good conversation with him since 1938; that he did not know her when she came to visit; that in 1941, 1942 and 1943 he would get up, walk around asking who the visitors were and when told would soon ask again; that he would sit with his pipe in his mouth and hat on and would not talk to witness. Basing her opinion solely on observation, she stated it was her opinion Joseph Kirby was insane in April 1944.

A. J. Herz, husband of contestant, testified that he visited the home of Joseph Kirby in April 1944; that testator did not come out to the car to greet him and stayed in the house; that when called to eat he would eat the food on the table whether good or bad, even if it had been sitting there a day or two; that he would not talk to the witness very much.

Ethel Monaca testified that during the past fifteen years she often made trips to Sioux City with contestant; that they always stopped to see testator and his sister, Mary Kirby; that they stopped there to see them Friday afternoon, April 7, 1944; that testator did not know who they were; that he held no conversation but stared into space; that he would tell his sister to chase the pigeons off the house but there were not any there; that he ate old food on the table which must have been there three or four days; that in 1943 when they went through, Mrs. Monaca saw him come to the table without putting on his pants and he just had on a shirt and underwear.

Sarah Neswick testified that she visited testator in his home in Farley, Epworth and Bankston; that she visited him in Farley in 1944; that on that visit his sister, Mary Kirby, would call him to eat and he would not wash his face or hands; that when he first moved to Farley she visited him and found him in the basement trying to shovel out the water, as it was raining hard and the water was about his waist; that when they got to Farley, Aunt Mary Kirby would tell him to come that they had company and he would say, "I don't want to see any company"; that he did not know the witness; that he would say there were birds out on the street or out on the porch but witness looked and saw none; that she returned to the testator's home from Chicago to find Aunt Mary Kirby trying to get testator to change his clothes, but that he would not get out of bed. This witness testified that while testator lived in Farley, they would stay in the Kirby home a night or two. Basing her opinion on observation, she was of the opinion that Joseph Kirby was insane in 1944.

Frances Gantz testified that she visited testator in the Farley, Iowa, home; that he did not carry on a conversation; that he did not seem to know her and did not have any interest in anything; that he could not remember where he left his pipe. Her opinion that testator was insane in 1944 was stricken, in view of her statement that she had seen testator once every two or three years and that no specific time was fixed in 1944.

The opinions of Margaret Herz and Sarah Neswick that Joseph Kirby was insane purported to have been based upon observations made at infrequent visits. As dealing with the weight of such opinions see Ipsen v. Ruess, 239 Iowa 1376, 35 N.W. 2d 82; In re Estate of Meyer, supra.

In support of the claim that the witnesses were qualified to express an opinion as to the mental condition of Joseph Kirby, appellant cites and relies upon our holding in In re Estate of Maier, 236 Iowa 960, 20 N.W. 2d 425. That was a case where nonexpert witnesses gave opinions as to the mental condition of the testatrix. In that case there were a number of nonexpert witnesses. Testatrix had lived in the home of some of these for many months; they were in a position to see her regularly, observe her actions and demeanor, and were in a position to form an opinion as to her mental condition. These observations

covered a period of about four years and up to just before the will was made. We held the opinions of such witnesses were based upon sufficient matters which made them of value in determining the question of mental capacity. In addition there was the testimony of eminent medical authority based upon personal treatment and observation and they gave opinions that testator was of unsound mind when the will was signed.

There was no evidence whatever that Joseph Kirby did not know or comprehend the natural objects of his bounty at the time of his will. He then had neither wife nor children. All of his heirs were collateral.

The record is silent as to the status or financial condition of any of the heirs of Joseph Kirby. Neither is there any evidence to indicate that Joseph Kirby did not know the nature and extent of his property.

When we consider all of the incidents recited by witnesses for contestant, either singly or collectively, we question that such show any legitimate tendencies that Joseph Kirby was not fully aware of what he was doing when he executed his will; that he did not have in mind his estate; or that he did not know the natural objects of his bounty. To make out a case such things must appear and the one contesting must so show. In connection with the foregoing we desire to call attention to the language of Justice Weaver, as set forth in Leonard v. Shane, 182 Iowa 1134, 1141, 166 N.W. 373, 375:

"It is never difficult to find witnesses who remember that he was forgetful, or was absent-minded or childish; that he would repeat old stories; had become careless in matters of dress; that he sometimes failed to recognize a friend or acquaintance; that his eyesight and hearing had become impaired; and so on through the whole category of infirmities which usually and normally appear in those who have passed the zenith of life and wend their halting way to its sunset. Nor is there ever wanting the expert, ready to respond to a hypothetical question embodying all these details, that one who manifests these varied symptoms is a 'senile dement.'"

It would seem that in a case of this kind where the testator has lived in a community for many years there could be found

those who could testify to their daily observations of the testator. No such evidence was produced.

No neighbors testified in this case. No business acquaintances testified. There was no medical evidence either by physicians who had opportunities for direct observations or by hypothetical questions. In short no person who lived in Farley, Iowa, and had an opportunity to observe the testator either from day to day, week to week or month to month was brought forward to detail any act which violated the norms of human behavior.

In all, contestant relies upon the testimony of five persons, all nonresidents of the community where testator lived—three of them disappointed nieces, the husband of one and her close friend.

A comparison of the facts in the Meyer case, supra, and those in In re Estate of Sinift, supra, with those of the instant case makes it crystal clear that the trial court was fully justified in ruling as it did. Below we will briefly summarize from the Sinift case, supra.

In that case the only issue involved in the appeal was the question of the mental incapacity of the testatrix. The trial court directed a verdict against contestants when they rested. On appeal, we affirmed. In that case the evidence was reviewed and many authorities setting forth the legal principles governing were cited. In it much of the evidence offered was set out and we think it was much more persuasive than that of the instant case. Such evidence covered a period of many years both before and after the will was executed. It tended in various particulars to show that Mrs. Sinift was getting weak; that she was forgetful both as to herself and her acquaintances; that she complained that she was poor and might have to go on an old-age pension, when in truth she was wealthy; that at times she did not know her relatives and became confused in that respect; that she would lose her way and would not know her own home; that she complained that certain people owed her money and would not pay her, when the facts were that no debts were owing; that she would borrow trifling articles saying that she could not afford them. The record was replete with many peculiar and unusual actions on the part of Mrs. Sinift, all advanced as showing her mental incapacity. Dr. Doolittle, operator of

"The Retreat" of Des Moines, testified as a specialist on mental ailments. In answering a hypothetical question wherein there were incorporated many of the incidents which contestants claimed showed mental incapacity, he testified in answer thereto that in his opinion Mrs. Sinift was a person of unsound mind on the day the will was executed.

In affirming the ruling of the trial court in the cited case the court set forth the following decisions of this court: Perkins v. Perkins, 116 Iowa 253, 90 N.W. 55, and Leonard v. Shane, supra (both by Weaver) ; Sevening v. Smith, 153 Iowa 639, 133 N.W. 1081; Gates v. Cole, 137 Iowa 613, 115 N.W. 236; Hanrahan v. O'Toole, 139 Iowa 229, 117 N.W. 675; Nowlen v. Nowlen, 122 Iowa 541, 98 N.W. 383; In re Estate of Evans, 114 Iowa 240, 86 N.W. 283.

Many other later cases from this court might be cited and quoted from In re Estate of Hayer, supra; In re Estate of Johnson, 222 Iowa 787, 269 N.W. 792; In re Estate of Haga, 222 Iowa 1313, 271 N.W. 296; Green v. Ellsworth, 221 Iowa 1098, 267 N.W. 714; In re Estate of Fitzgerald, supra; In re Estate of Kenny, 233 Iowa 600, 10 N.W. 2d 73; In re Estate of Heller, 233 Iowa 1356, 11 N.W. 2d 586; In re Estate of Hollis, 234 Iowa 761, 12 N.W. 2d 576.

The ruling of the trial court was correct and the case is affirmed.—Affirmed.

BLISS, C.J., and HALE, WENNERSTRUM, GARFIELD, MULRONEY, and HAYS, JJ., concur.

OLIVER, J., dissents.

SMITH, J., takes no part.