In re Estate of W. H. Moeller, deceased; J. W. Moeller, objector.

No. 48733.

(Reported in 73 N.W.2d 15)

November 15, 1955.

Jones, Cambridge & Carl and R. W. Cockshoot, all of Atlantic, for objector-appellant.

Peterson, Smith, Peterson, Beckman & Willson, of Council Bluffs, for proponent-appellee.

WENNERSTRUM, J.—Amanda M. Moeller was the proponent of the will of W. H. Moeller, deceased, which was dated January 27, 1951. She was the sister-in-law of the decedent and was named executrix of the will. Objections to the probate of it were filed by J. W. Moeller, a brother of the decedent, wherein it was asserted the testator was of unsound mind at the time of the execution of the will, the proponent, Amanda M. Moeller, unduly influenced the decedent to execute it and that it had not been properly executed. An answer was filed denying each of the grounds of the objections. Upon submission of the proponent's proof of the execution of the instrument it was admitted to probate. A motion for a directed verdict upon the question of the testamentary capacity of the decedent was sustained at the conclusion of the objector's case. At the conclusion of the submission of all the evidence the proponent's motion for a directed verdict upon the issues of undue influence and the proper execution of the will was sustained. Thereafter a judgment and order of the court was entered admitting it to probate. The objector has appealed.

W. H. Moeller had never married and was 81 years of age at the time of his death on April 14, 1952. His brother C. C. Moeller died June 27, 1947. The testator, W. H. Moeller, had lived with his brother and sister-in-law for many years in Atlantic. In 1922 C. C. "Chris" Moeller married Amanda M. Moeller. They had no children. Following the death of Chris the decedent continued to live in the home, which the two brothers had owned, with his sister-in-law. The two brothers had engaged in business together and owned three farms in partnership, as well as a certain amount of personal property. Chris' estate was valued at approximately $112,000. The two brothers had joint

savings accounts in several financial institutions in Atlantic.

W. H. Moeller left surviving him the objector, J. W. Moeller, a brother, who was 78 years of age at the time of the trial. A sister, Amelia Tiedje, had predeceased the testator by many years. She was survived by seven children who, along with the objector, were the heirs-at-law of the decedent. The objector and the testator had not been on friendly terms for many years.

The question before this court is whether the trial court was justified in directing the verdict it did and in sustaining the admission of the will to probate. Consequently it has been necessary for us to review the evidence presented by the proponent and the objector. It will be impossible to even summarize all the testimony. However, as a basis for our conclusion we deem it advisable to set out pertinent portions of it.

Prior to moving to Atlantic, about 1922, the testator and his brother Chris had lived on a farm in Shelby county. It is disclosed Chris Moeller looked after the farm properties owned by the two brothers, and that they engaged in real-estate business to a limited degree while living in Atlantic. However, there is evidence Chris Moeller transacted most of the business carried on by them.

The will here in question was prepared by an Atlantic attorney who had taken care of much, if not all, of the legal business of the two brothers during the later years of their lives. Under the will of C. C. Moeller, W. H. Moeller and Amanda Moeller were appointed as executors of it. The attorney who prepared the last will of W. H. Moeller, as well as earlier ones, was the attorney for the executors of the estate of C. C. Moeller. Under the terms of the will of C. C. Moeller the entire estate, after the payment of debts and expenses, was divided equally between the brother, W. H. Moeller, and Amanda Moeller, the wife. However, it was provided in case W. H. Moeller predeceased his brother the entire estate would then pass to the wife, Amanda Moeller.

As indicative of the manner in which the decedent here involved had sought to previously dispose of his property it is shown he had executed two prior wills to the one here in question. The last will changed the nature of the bequests. The three

wills all have a bearing on whether the testator had knowledge of his property and his heirs.

The first one was dated August 29, 1947. In this will W. H. Moeller left his entire estate to his sister-in-law, Amanda M. Moeller. This will was prepared a short time after the death of his brother Chris. It was therein provided if Amanda M. Moeller died prior to the death of W. H. Moeller an only son of the objector, Walter Moeller, was to receive a one-quarter section of land; a one-quarter section of land was devised to a niece, Mabel M. Kleen; and a life estate in 70 acres of land was given to a niece, Bertha Tiedje, with the remainder to her brothers and sisters. It was also therein provided that if Amanda M. Moeller did not survive him there was willed to Anna Tiedje Fredrickson, a niece, the sum of $9000. The remainder of the estate, in the event Amanda M. Moeller predeceased the testator, then was bequeathed to the seven children of the testator's deceased sister.

The second will was dated September 7, 1950. In this will the testator left a one-half interest in a one-quarter section of land to his nephew Walter, the only son of the objector. It was therein further provided a three-quarters interest in another section of land was disposed of in the following manner: a one-fourth interest to Amanda and a one-half interest to the seven children of the deceased sister of the testator. The personal property was given to Amanda and she was appointed executrix. The decedent had visited the attorney's office at the time the second will was prepared. He came to the office alone.

Under the terms of the will of January 27, 1951, here in controversy, it provided for the payment of expenses and debts; a bequest of $1500 to each of the seven children of the testator's deceased sister, except Bertha, and $1500 to the objector's son, Walter Moeller, and a bequest of $5000 to Bertha Tiedje, the seventh child of the deceased sister of the testator. The remainder of the estate was willed and devised to the testator's sister-in-law, Amanda Moeller. It was also therein provided that in case of a will contest by a beneficiary the share of such contestant should lapse and become a part of the residue of the estate. The testator's sister-in-law, Amanda M. Moeller, was named as executrix.

The objector, in his brief, gives particular consideration to the fact that on December 4, 1950, one month and twenty-three days before the will in question was drawn, the proponent, Amanda M. Moeller, took the testator to a Dr. Gordon Best of Council Bluffs, Iowa. After an examination of the decedent Doctor Best signed a statement which was shown to the decedent's lawyer by Amanda on their return to Atlantic. It stated: "I consider him in full possession of his mental faculties and entirely capable of making a will, if he should so desire." It is disclosed by the evidence of Doctor Best he had not been told that prior to his examination the decedent had become lost in his neighborhood and had not recognized himself in a mirror. The doctor also testified the decedent was moderately deaf and during the examination the proponent of the will repeated his questions to Moeller. He also testified that Amanda M. Moeller stated to him there was trouble in the family.

The objector presented several witnesses who testified that during 1949, 1950 and 1951 the testator had asked these witnesses: "where Chris was", or "whether Chris had come with me." It is shown by some, if not all of these witnesses, the death of Chris had particularly affected the testator. It is also disclosed by the objector's witnesses the decedent had failed to recognize old friends. As bearing upon the fact the testator did not know who his heirs were, there is evidence to the effect that in the latter part of 1950 one of his nephews visited with him and he did not recognize who he was. It was, however, shown that this witness, John T. Tiedje, was mentioned in the will of W. H. Moeller as one of the legatees.

As bearing on the claimed confidential relationship existing between Amanda M. Moeller and W. H. Moeller it is the contention of the objector the testator from the time he moved to Atlantic in 1922 until his death was dependent upon his brother and his sister-in-law for necessary attention to many matters. It is the claim of the objector that W. H. Moeller did not drive a car, that he never made any purchases of groceries or that he ordered any over the telephone. It is further claimed this confidential relationship is shown by a circumstance when an insurance agent called at the home for the purpose of selling some hail insurance. At that time the testator stated: "* * * no, I

don't want any hail insurance, we never did carry it, I don't want any." However, it is shown by the agent's testimony he later received an application which was taken out in the name of Amanda Moeller and was paid for by her own check. This insurance was apparently written on the interest Amanda had in certain farm property.

There is evidence that on some of the farm rental notes the endorsements of payments were made by Amanda M. Moeller, that government bonds registered in W. H. Moeller's name were cashed by her and that she renewed the leases on the land and accompanied W. H. Moeller to the farms.

As bearing on the claimed physical and mental ailments of the testator witnesses for the objector stated the decedent had talked to imaginary persons in his home. It was also brought out by the testimony of a Doctor Long that in March 1951 Amanda M. Moeller called him to come and see the decedent and he found his complaint was that of restlessness. It is also shown that in April 1951 the doctor was called relative to a cough and cold which the testator had. He also attended the decedent again in May and June of that year. It is also disclosed by the evidence of this doctor in September 1951 Henry complained of bad dizzy spells. He was also called to administer to the testator on some later occasions in order to relieve him because of a diabetic condition. Doctor Long diagnosed the cause of the death of the decedent to be an arteriosclerosis condition and a general deterioration.

Inasmuch as we necessarily must be concerned with the mental condition of the testator at the time of the execution of the will and the circumstances existing at that time, it is advisable that we here set forth some of the testimony pertaining to its execution. There is evidence that from 1942 on to the time of the death of the testator the attorney who prepared the will made out every one of the decedent's tax returns, had done other legal work for him and Chris and had been the attorney for the executors of Chris' estate. His testimony, in part, is to the effect that in the latter part of November, or early December 1950 he was at the home of the testator, in order to obtain some information relative to the preparation of an amended estimate for income tax purposes. At that time Amanda Moeller was also in

the home. On this occasion the testator told the attorney he wanted to change his will in that in his previous will a niece, Bertha Tiedje, had not been taken care of as he wanted her to be. The attorney told the testator it was a busy time because of income tax work and he would take care of the redrafting of a will as soon as he could. It is shown that later in December 1950 or January 1951 he was at the home in connection with income tax papers. At that time he had with him a carbon copy of the previous will the testator had made in September 1950. The testator then stated to the attorney he wanted to leave Bertha $5000 because she was crippled and he wanted to leave the remainder of the Tiedje's children each $1500. He also stated he wanted to give Walter Moeller, son of the objector, $1500. The testator in this conversation further stated he did not want Amanda to be owning a farm in partnership with Mrs. Fredrickson. This last named person was a niece, a daughter of Amelia Moeller Tiedje, the deceased sister of the testator. The decedent further told the attorney Mrs. Fredrickson had been to the home and had caused him trouble and she had been trying to get him to go to another attorney's office to sign some papers. The attorney also testified he was at the home on January 26, 1951, the day before the last will was signed, that he went into the dining room and had the will with him as he had drawn it and it was read by the testator. The testator told the attorney the will was prepared the way he wanted it but inquired if it was possible to have a clause added to the will whereby any person who was a beneficiary of it and contested it would be deprived of the amount of any bequest. The attorney stated that on January 26, 1951, he did not see Amanda Moeller in the house after she let him in. The attorney further testified that on the next day, January 27, 1951, he telephoned the home and informed Mrs. Moeller he was coming out. A Mrs. Dora Brillhart, a neighbor, was present as a witness to the will. The attorney further testified no one else was in the room with the testator and him, that he handed the will as redrafted to him and he read it. He further testified: "He handed the will back to me and said, yes, and there was some conversation, he read it out loud and said that was the way he wanted it. There was no one else up to that

time in the room with us. He got out of the rocker, walked over to the dining room chair that was in the same room to the dining table and sat down. * * *." It was following these incidents Mrs. Brillhart was called in to witness the will. The attorney was the other witness. Although Amanda M. Moeller was in the house during the time the attorney was in conference with the testator it is shown that she was not in the room at any time with them.

We are particularly concerned with the facts pertaining to the mental capacity of the testator at the time the will was executed. Heretofore there have been set forth the incidents that led up to the final preparation and signing of the will. The changing and revoking of a prior will do not necessarily indicate a lack of mental capacity. In the instant case it is shown under the 1947 will Amanda Moeller was to receive all the testator's estate and it was only in case she was to predecease him were any of the nieces or nephews to obtain any benefits from it. It is apparent one of the legatees under the first will would have received a bequest of $9000 if Amanda M. Moeller predeceased the testator. However, there is evidence the testator had just occasion to change this bequest. It is of interest to note this individual, one of the legatees, Mrs. Anna Fredrickson, testified most emphatically concerning the mental condition of the testator. And in the second will the several nieces and nephews were given a fractional interest in certain real estate. As shown by the testimony of the attorney who prepared the last will the testator stated it was not advisable to have the property held in a manner where there would be conflicting interests.

All these circumstances give support to the theory the testator had given careful consideration to the manner in which he desired his property to pass upon his death. The last will is more liberal to the nephews and nieces than the first will and there is no evidence of the financial value of the interest the legatees would have received under the second will.

I. The contestant contends there were many incidents of a circumstantial nature which indicate that undue influence was exerted over the testator. It is maintained these circumstances warrant the submission of the question of undue influence to the

jury. He cites: Olsen v. Corporation of New Melleray, 245 Iowa 407, 60 N.W.2d 832; In re Estate of Rogers, 242 Iowa 627, 47 N.W.2d 818; In re Estate of Farlow, 243 Iowa 15, 50 N.W.2d 561. See also authorities noted in the cited cases. We do not believe the factual situations are the same in these cases as those here presented.

■■ In order for evidence of a circumstantial nature to be sufficient it must be such as to show the instrument in question evidenced the intent of the person so exerting the influence rather than the person who executed it. We so held in In re Estate of Klein, 241 Iowa 1103, 1118, 42 N.W.2d 593, 602, where we stated: "* * * However, undue influence must be such as to substitute the will of the person exercising it for that of testator, thereby making the instrument express the intent of such person, not of the testator. It must operate at the very time the will is made and control its making. It is not established by proof of opportunity and disposition to exercise it. Importunity, request and persuasion that do not control the will are not enough [citing cases]."

■ II. We have repeatedly held in a will-contest case the objector must show testamentary incapacity at the time of the execution of the will. The rule relative to such issues was succinctly stated in In re Estate of Rogers, 242 Iowa 627, 630, 47 N.W.2d 818, 820, where we stated: "* * * Where this issue is involved the burden is upon the contestants to show lack of mental capacity of the testatrix in one of these respects: (1) To understand the nature of the instrument he is executing (2) to know and understand the nature and extent of his property (3) to remember the natural objects of his bounty, and (4) to know the distribution he desires to make. If his mental capacity is not equal to any one of these tests he cannot make a valid will [citing cases]."

■ We hold the objector has not met the burden placed on him. Other cases holding as heretofore stated and bearing thereon are: In re Estate of Ruedy, 245 Iowa 1307, 66 N.W.2d 387; In re Estate of Ransom, 244 Iowa 343, 57 N.W.2d 89; In re Estate of Kirby, 241 Iowa 340, 41 N.W.2d 8.

III. There is no issue raised in this court regarding the

proper execution of the will although it was one of the grounds incorporated in the objections to the probate of the will.—Affirmed.

OLIVER, C. J., and BLISS, GARFIELD, SMITH, HAYS, THOMPSON, and LARSON, JJ.,concur.

PETERSON, J., takes no part.