OF THE

## STATE OF IOWA

AT

## DES MOINES JANUARY TERM, 1907

AND IN THE SIXTY-FIRST YEAR OF THE STATE.

---

ASA HARDENBURGH, MYRTLE RUTH HARDENBURGH, AND
MARY ALICE HARDENBURGH, proponents of the alleged last
will and testament of THOMAS HARDENBURGH, deceased,
v. WELLER HARDENBURGH, MARY RAHM, GEORGIANA
DEAN, ALICE H. PHELPS AND ADA LANCASTER, con-
testants, Appellants.

**Will contests:** MENTAL CAPACITY: INSTRUCTION. The concession in
1 a will contest that but for certain insane delusions the testator
was competent to make the will relieved the necessity of in-
struction on the question of general mental incapacity.

**Insane delusions:** EVIDENCE. Evidence reviewed and held to show
2 that testator was afflicted with certain insane delusions to such

* This and the four succeeding cases were received too late to
appear in chronological order. (Editor.)

an extent as to render his will disinheriting his daughters, void, although his general mental capacity remained unchanged.

**Evidence:** DISINHERITANCE.  Absolute disinheritance of children is a circumstance to be considered on the issue of testator's mental capacity.

*Appeal from Cass District Court.*— HON O. D. WHEELER, Judge.

TUESDAY, DECEMBER 11, 1906.

THIS is a contest over the last will and testament of Thomas Hardenburgh, deceased.   There was a trial to a jury and a verdict sustaining the will.   From a judgment on the verdict the contestants appeal.   *Reversed.*

*J. B. Rockafellow* and *Willard & Willard,* for appellants.

*C. A. Meredith* and *Thomas B. Swan,* for appellees.

SHERWIN, J.— The contestants, Mary Rahm, Georgiana Dean, Alice H. Phelps, and Ada Lancaster, are daughters of the deceased Thomas Hardenburgh.   In the contest filed by them they allege that, at the time of the execution of the will on the 7th day of March, 1903, Thomas Hardenburgh was ninety years of age, and very infirm in mind and body, and did not have sufficient mental capacity to make a will or to comprehend the nature and effect of the instrument that he then signed; that the said Thomas Hardenburgh, at the time of executing the will, was laboring under delusions which influenced him in making said instrument and caused him to make a disposition of his property therein that he would not have made had he been sane and not influenced by such delusions.   The delusions alleged to have existed and to have influenced the disposition of his property are stated as follows in the contest:   " He, without any

foundation therefor, was laboring under the delusion that his daughters were unchaste women and not fit subjects of his bounty. He, without any foundation therefor, was laboring under the delusion that his daughter Mary Rahm had attempted to, and intended to, poison him; and that he labored under the further delusion that certain of his children had stolen money and other property from him. It is further alleged that all of said delusions caused him to dislike and to become insanely prejudiced against his said daughters, and particularly against Mary Rahm, and that such prejudice caused him to devise all of his property to others. It was admitted by the contestants that the instrument offered for probate as the last will and testament of Thomas Hardenburgh was in due form and duly signed and witnessed.

The contestants produced evidence tending to show that the deceased was, at the time of executing said will, of unsound mind and generally incapable of making a valid will. The proponents took issue with this claim and produced evidence tending to show the mental capacity of the testator. At the close of all the evidence the following agreement was made and entered of record: " It is agreed by the contestants that no claim of general mental incapacity is made, and it is conceded by them that, but for the delusions claimed by them to exist in the mind of testator, he had the capacity to make the instrument in question." Following this concession on the part of the contestants, the court instructed the jury as follows: " It is not claimed that the said Thomas Hardenburgh was a lunatic or that he is what is ordinarily termed ' crazy,' but it is claimed that he entertained certain insane delusions, and that the will in question was influenced by, or the result of, such delusions." The court, in its further instructions, directed the jury that, if they found the existence of the delusions claimed by the contestants to have existed at the time the will was executed, and further found

1. WILL CONTEST: mental capacity: instructions.

that such delusions influenced the testator at the time he
executed the instrument and caused him to make a different
disposition of his property than he would but for such de-
lusions, it would defeat the will; and the court further in-
structed that, if either one or both of said material matters
were not so shown, the verdict must be for the proponents.
The appellants complain of these instructions because they
eliminated from the consideration of the jury the question
of the general mental incapacity of the testator, and say that,
because of the testimony tending to show the general mental
weakness as the result of old age, they were entitled to have
the question of his general capacity submitted to the jury
notwithstanding their concession.   But we are unable to
agree with the appellants on this proposition.   While it is
true that the existence of insane delusions shows a diseased
condition of the mind, it is still true that a person thus
afflicted may be entirely sane on all other subjects, so that,
although one afflicted with insane delusions cannot be said
to be possessed of an entirely sane mind, it cannot be said
that he is generally insane or of such mental incapacity as
to disqualify him from making a valid will.   The conces-
sion that, but for the delusions, the testator had the mental
capacity to make the instrument in question, justified the
instructions given by the court limiting the question for the
jury to determine to the delusions and effects thereof.

    The only other question presented for our determina-
tion is whether there is sufficient evidence to support the ver-
dict and judgment.   It is almost conclusively shown that

2. INSANE          the testator was the subject of the delusions
DELUSIONS:
evidence.          which are said to have existed in his mind,
and, from a very careful examination of the evidence, we
are fully satisfied that these delusions were insane in their
nature and quality.   At the time of the contest the daugh-
ters were women well along in years.   They were all women
of respectability and high standing in the community where
they resided.   There had been nothing in their conduct,

either in their private life or in public, indicating that they were not women of the severest virtue, and yet the charges of unchastity were frequently made against them. It is true, the charges were not made to the public, but were confined to the members of his own family, and oftentimes made directly to the persons accused.

This is conclusively shown, but, to refute this claim on the part of the contestants, the proponents produced evidence tending to show that persons living in the community with the deceased, and whom he occasionally met and conversed with, had never heard him make such charges against his daughters. Conceding all this to be true, it does not necessarily follow that the delusions did not exist as claimed by the contestants. The entire record shows that Mr. Hardenburgh was an old resident of that community, a man of high standing, and that he was proud of his standing and position; that the idea that his daughters had brought shame upon the family name by their conduct weighed heavily upon his mind, and that he continually referred to the matter when in their presence. It is not at all strange, therefore, nor is it inconsistent with the claim of the contestants, that he did not publicly proclaim the supposed shame of his daughters; and we reach the conclusion on this branch of the case that there was really no substantial conflict in the testimony as to the existence of the delusions. Our conclusion is strengthened by the testimony tending to show that Mr. Hardenburgh, in the latter years of his life, conceived the idea that women generally were unchaste; and further, that he many times stated to his daughters and to their families that the neighboring women who visited them were immoral, and that their visits were for immoral purposes. He at one time made such a statement to his physician, although there was absolutely no foundation therefor. The proponents rely on a statement alleged to have been made by the deceased that he had never made accusations of unchastity against his daughters. It does not appear from the record,

however, that his family or any member thereof had ever made public the charges which he was making against them, and, in the conversation to which we have referred, the deceased went no further than to deny having made such charges. As we understand the record, this evidence was subsequently excluded on the motion of the contestants, and, if this be true, there was nothing in the record except the testator's silence on the subject, so far as the public was concerned, contradicting the testimony of the contestants. It is the general rule that insane delusions existing in the mind of a testator will render invalid a will which is the direct offspring of such delusions, although the general capacity of the testator remains unimpaired. This rule is conceded by the appellees as we understand their argument, and it only remains for us to determine whether there is a substantial conflict in the evidence on the question whether the will was or was not the offspring of such delusions. The record conclusively shows that, until a few years before his death, and until the delusions spoken of took possession of his mind, the testator thought a great deal of the daughters, particularly Mrs. Rahm, on whom he seemed to rely for care and nursing when sick, and even did so until a short time before his death, notwithstanding the fact that he had made serious charges against her. The proponents offered evidence tending to show that the testator complained of neglect on the part of Mrs. Rahm during his illness, and of an overcharge for services rendered him. Aside from the complaint alleged to have been made by the testator, the evidence conclusively shows that he received the best of care and attention while at his daughter's house, and that no overcharge, nor, indeed, any charge, was made by her for her services.

In his will no provision was made for either of the contesting daughters. While it is true, as a general proposition, that one may dispose of his property by will as seems to him best, it is equally true that, where a will absolutely

disinherits the children of the testator, it is a circumstance to be considered on the issue of the testator's mental condition. The children of the testator are the natural recipients of his bounty, and, when they are entirely ignored in the disposition of his property, it is *prima facie* an unnatural and unreasonable act. *Bever v. Spangler*, 93 Iowa, 576.

3. EVIDENCE: disinheritance.

We think the conclusion inevitable from the record that the will in question, was the result of the testator's insane delusions and that there is no substantial evidence to the contrary. It therefore follows that the verdict sustaining the will should not have been permitted to stand. The judgment is therefore *reversed.*