In re Estate of Ella Van Dyke.

Harley Van Dyke et al., appellants, v. Benton County Bank & Trust Company et al., appellees.

No. 48356.

(Reported in 65 N.W.2d 63)

June 15, 1954.

Don Boddicker, of Vinton, Lundy, Butler & Lundy and Donald C. Wilson, all of Eldora, for appellants.

Milroy, Milroy & Milroy, of Vinton, Leo A. Hoegh, Attorney General, and Clarence A. Kading, First Assistant Attorney General, of Des Moines, for appellees.

LARSON, J.—Ella Van Dyke, a resident of Vinton, Benton County, Iowa, died on September 2, 1952, at the age of seventy-four years. On September 5, 1952, instruments purporting to be her last will and testament and three codicils were filed for probate in the office of the Clerk of the District Court in and for Benton County, Iowa. On September 25, 1952, Harley Van Dyke and Helen Marie Klindt, the children of the decedent, filed their objections to the probate of these instruments, the basis of which was alleged testamentary incapacity of Ella Van Dyke at and about the time of the execution of said instruments. The will was purported to have been executed by testator April

17, 1950, the first codicil October 18, 1950, the second codicil April 14, 1951, and the third codicil December 22, 1951. Proponents are the Benton County Bank & Trust Company of Vinton, Iowa, and The Iowa Annie Wittenmeyer Home of Davenport, Iowa. The latter is a legatee named in the purported third codicil and the Benton County Bank & Trust Company is the executor of the purported will. The property involved was some real estate in Vinton valued at $3000, cash deposit in the bank of about $900, a note of Harley Van Dyke for $275, United States Government G Bonds of $1890, some other government bonds with survival provisions made to her children and their offspring, deposits payable at her death of $500 each to Father Flanagan's Home and the Foundation for Infantile Paralysis.

Proponents introduced evidence of the due and legal execution of the will and codicils. Contestants then introduced evidence on the issue of testamentary capacity. At the conclusion of contestants' evidence, proponents made a motion for directed verdict. The principal issue here was as to testatrix' testamentary capacity. The principal ground of proponents' motion was that if the jury were to return a verdict in favor of the contestants, it would be the duty of the court to set same aside as being contrary to the record evidence and contrary to law, and that being true, it would then be the duty of the court in the first instance to direct the jury to return a verdict against the contestants and in favor of the proponents, citing In re Estate of Sinift, 233 Iowa 800, 10 N.W.2d 550; Potter v. Robinson, 233 Iowa 479, 9 N.W.2d 457, and cases cited therein. On this rule of law there is no debate.

The trial court here sustained proponents' motion and did direct the jury to find in favor of the proponents. The correctness of that decision presents the major question for our decision herein. We must therefore review the evidence introduced by contestants.

Dr. C. S. Youngstrom, 43-year-old doctor of medicine and surgery, was qualified by a showing that he was admitted to practice in the State of Iowa, a graduate of the University of Nebraska College of Medicine, that he had a one-year internship

at the U. S. Marine Hospital at Seattle, Washington, a two-year surgical residency at Henry Ford Hospital, Detroit, Michigan, a one-year surgical residency at the LaCrosse Lutheran Hospital, LaCrosse, Wisconsin, and worked for a considerable time for the Veterans Administration during which he had one year of additional specialized training in neurology. He had practiced his profession fourteen years and became acquainted with Ella Van Dyke the latter part of May 1949. He saw her professionally at that time and gave her a physical and mental examination. Thereafter he saw her sometimes every week, sometimes every day, and generally at least once a month until he left Vinton in January 1952. He testified that in his opinion, based upon his examination and observations of and conversations with her over that period, "she was not sound of mind." He said the condition of her mind was such as to deprive her of intelligent action and was such that she could not comprehend the value of her property and her estate and the obligations she was under to those near to her or nearly related to her. He testified that she had "hypertension heart disease, arteriosclerosis and cerebral arteriosclerosis"; that she had a stroke (which meant cerebral apoplexy or the rupture of a blood vessel with hemorrhage into the brain) in July 1950, and that her physical condition cut down the blood supply to the area of the brain involved in making decisions and slackened her judgment; that her emotions were variable above normal; that her mental ailments came under three types: "Light of ideas, ideas of persecution and mental layability"; and that her mental condition got progressively worse. He said she was always telling him about people trying to get her money, trying to poison her, and that she was dissatisfied and found fault with everyone.

I. Proponents contend that the doctor's testimony shows by his own admission that he was not an expert on mental ailments, and that his testimony should be given no different treatment than a lay witness as to his opinion of testatrix' mental condition. Although the doctor was permitted to give his opinion that Ella Van Dyke was of unsound mind, the trial court apparently gave this testimony no more consideration than it did the lay testimony, and thus, we think, committed reversible error.

This case is not unlike the one presented to us in In re Will of Overpeck, 144 Iowa 400, 403, 120 N.W. 1044, 1045, 122 N.W. 928, in which we held that the issue of want of mental capacity was properly submitted to the jury. We said therein: "With reference to the evidence as to capacity of the testatrix at the time this will was executed, there was clearly such conflict as to justify the court in leaving it to the jury for decision. Testatrix was eighty-two years of age when the will was executed, and had for four years been in poor health, and under treatment by the physician whose testimony as an expert is principally relied upon by contestants. She had been suffering from heart disease, kidney trouble and indigestion. An attending physician under such circumstances might well have observed indications of senile dementia in testatrix which had escaped the detection of her neighbors and friends, who saw her only occasionally, and were without special qualifications for judging as to the inroads which increasing age and physical infirmity had made upon her mind. We express no opinion as to the weight which should have been given to the testimony of this expert, nor as to whether it was sufficient to overcome the testimony of many acquaintances who expressed the belief that, until after the will was executed, she was in the possession of her normal faculties."

Also in the case of Monahan v. Roderick, 183 Iowa 1, 13, 166 N.W. 725, 729, Judge Evans speaking for the court said: "The argument now made by appellant is that the witness, being nonexpert, should not have been permitted to express his opinion of mental unsoundness, inasmuch as he had not stated the facts upon which he based such opinion. As already indicated, the witness purported to qualify as an expert. It is not pointed out in appellant's argument wherein the attempted qualification was deficient. It did appear in the cross-examination that the witness was not a specialist in mental diseases. This would not necessarily destroy his expert character. The boundaries of the field of expert knowledge are somewhat indefinite. There are varying degrees, also, of expert knowledge upon any subject. A regular practicing physician is usually regarded as expert, at least to some extent, and for some purposes. We see no reason to say that he is not qualified, as such,

to give an opinion as to the feeble-minded condition of a patient under his care."

It is true we held that the testimony of a doctor expert did not create a fact question for the jury in the case of In re Estate of Sinift, supra, wherein a mental expert was permitted to give his opinion, over objections, that the testatrix was a "senile dement." There, however, the expert had never seen the testatrix, and his answer was in response to a long and complicated hypothetical question in which we found that the time element was not specified satisfactorily.

In a later case of Miller v. Miller, 237 Iowa 978, 987, 23 N.W.2d 760, 765, Judge Oliver speaking for the court said:

■ . "Although what the doctor said to his patient may have been immaterial, his professional opinion as to the condition of his patient was material. * * * Another ground of objection was that there was no proper foundation laid for the opinion of the doctor. Appellant contends the doctor testified as a nonexpert. We disagree. A regular practicing physician is usually regarded as qualified to give an expert opinion of the mental condition of a patient under his care", citing Monahan v. Roderick, supra.

■ Of course under the rule set out in Grismore v. Consolidated Products Co., 232 Iowa 328, 342, 5 N.W.2d 646, we recognized that if the matter to be determined is one in which opinion testimony is proper, such testimony will not be an invasion or usurpation of the province or function of the jury, even though it passes upon an ultimate fact which the jury must determine.

■ Other cases where we have said a properly qualified doctor testifying as to his opinion on the mental capacity of his patient created a jury question were In re Estate of Guinn, 242 Iowa 542, 47 N.W.2d 243, and Storbeck v. Fridley, 240 Iowa 879, 38 N.W.2d 163. We must conclude therefore in the present matter that the testimony of Doctor Youngstrom as an expert was substantial evidence on an issue of fact. The jury's verdict would not therefore be left to conjecture. We have repeatedly stated that when the record presents a set of facts from which reasonable minds might differ as to what conclusion

948

should be drawn from the facts related, a jury question is presented. This court is not a trier of facts. In re Estate of Maier, 236 Iowa 960, 964, 20 N.W.2d 425, and cases cited therein; In re Estate of Sinift, supra; In re Estate of Hadley, 241 Iowa 1280, 45 N.W.2d 140; In re Estate of Kirby, 241 Iowa 340, 41 N.W.2d 8.

We have examined the case of In re Estate of Hollis, 234 Iowa 761, 768, 12 N.W.2d 576, 580, cited by the proponents, wherein we said that "the right to dispose of property by will is one which the law is slow to deny." We agree and further recognize that it is not necessary that one be competent to make contracts or transact business generally to be able to dispose of his property by will. See Perkins v. Perkins, 116 Iowa 253, 90 N.W. 55; In re Estate of Heller, 233 Iowa 1356, 11 N.W.2d 586, and cases cited therein. We have said many times that as long as the maker has mind enough to know in a general way the natural objects of his bounty, the nature and extent of his estate, and the disposition he wishes to make of it, he may make a good will (In re Estate of Groen, 245 Iowa 634, 62 N.W.2d 143), but that is not at issue herein. The issue here is who must decide, on the evidence introduced, whether the testatrix had such testamentary capacity, the court or the jury. In the Hollis case it must be pointed out that there was no expert testimony. No one claimed there was any permanent unsoundness or any progressive mental disease such as we find herein.

Here the doctor testified as to testatrix' permanent unsoundness and said it was progressive. He said "her mental condition during the three-year period I was with her got a little worse." His opinion as an expert is material evidence amounting to much more than a scintilla and it need not be conclusive. In re Estate of Guinn, supra. If he is to be believed, testatrix' ailment was no mere senile weakness, the normal and to-be-expected incident to advanced age, but on the contrary was such as might well produce testamentary incapacity.

II. We see little object in a review of the testimony of the lay witnesses in view of what we have said heretofore. It will suffice to say that a neighbor, two nurses aids and testatrix'

son and daughter were examined, and though no objections were offered to the opinion testimony of the neighbor and the son, Harley Van Dyke, that she was of unsound mind, and it became a part of the record, there was a serious question whether or not a proper foundation had been laid for that testimony. The trial court properly, we think, rejected the opinion of the lay witness Helen Klindt, a daughter, for the reason that she had not testified to sufficient facts upon which she could base an opinion as to her mother's mental soundness. Whether a non-expert witness has testified to sufficient facts upon which to base an opinion as to the mental soundness is primarily a question of law for the court in the exercise of sound legal discretion (In re Estate of Guinn, supra), and it will only be disturbed where there appears to have been an abuse thereof. Usually where a witness is properly allowed to give an opinion, its value is for the jury to determine. In re Estate of Maier, supra. In the Maier case there also appeared both expert and lay witnesses who gave testimony of other facts and circumstances which might be properly considered as bearing on the testamentary capacity of testatrix, and we held there that the court properly submitted the case to the jury.

Motions for directed verdicts require, of course, that the evidence be considered in a light most favorable to the contestants. Remer v. Takin Bros. Freight Lines, 227 Iowa 903, 289 N.W. 477; In re Will of Winslow, 146 Iowa 67, 124 N.W. 895, Ann. Cas. 1912B 663. But even so, we, like the learned trial court, were not convinced as a matter of law that the lay testimony would justify jury submission. There was very little testimony concerning testatrix' behavior that was inconsistent with a sound mind. We are however just as clear that the contestants relied principally upon the doctor's testimony upon the question of her testamentary capacity and that that testimony was such as to require the submission of that question to the jury. The weight to be given such testimony is for the jury to decide in determining whether or not Ella Van Dyke had testamentary capacity at the time she executed the will and the codicils involved herein. In re Estate of Maier; In re Estate of Sinift; In re Estate of Hadley; In re Estate of Kirby, all supra.

■ III. Contestants further contend that the court erred in sustaining generally proponents' motion for a directed verdict, citing the provisions of rule 118, Iowa Rules of Civil Procedure. They point out that proponents' motion was in four paragraphs or divisions and that the court should have ruled on each specifically rather·than all generally. Proponents on the other hand contend that all are so interrelated that they must be argued and considered together, the issue being on whether the evidence was material, competent and substantial, tending to show testamentary incapacity of the testatrix, and that no prejudicial error resulted.

We considered this rule in Hull v. Bishop-Stoddard Cafeteria, 238 Iowa 650, 26 N.W.2d 429, wherein Judge Bliss held the rule applicable to motions to direct a verdict as well as those before trial, and in Melsha v. Tribune Pub. Co., 243 Iowa 350, 355, 51 N.W.2d 425, 428, wherein Judge Hays warned that "in fairness to all parties, litigants and to this court, a failure to observe such rule 118, R. C. P., should ordinarily be held to constitute a reversible error." It is unnecessary to decide this issue at this time due to the fact that we have already determined that there was reversible error in sustaining proponents' motion on other grounds.

It may be well to say that the situation presented is a borderline case, and it might well be that if this were the only issue involved herein we would hold it a prejudicial error and reverse on that ground. On the retrial it might be wise to observe the rule for the reasons set out above by Judge Hays.

■ We have carefully examined the record herein and the many authorities cited by able counsel on both sides and we reach the conclusion that the trial court did err in sustaining proponents' motion for a directed verdict and that the expert testimony presented by the contestants did require its submission to the jury under proper instructions of the court on the issue of the testamentary capacity of testatrix. Accordingly, the judgment is hereby reversed and remanded.—Reversed and remanded.

All JUSTICES concur.